The Commonwealth ex rel. BRODHEAD *against* COCHRAN and others, the Officers of the Land Office.

The Board of property has the same judicial power, in regard to *donation* lands, as in other cases; and after they have deliberated and decided against issuing patents, a *mandamus* does not lie to compel them.

AT *May* Term 1810 a rule was obtained upon the defendants to shew cause why a *mandamus* should not issue, commanding them to grant patents to the relator, for several tracts of donation land claimed by him, in right of several soldiers of the continental army in the war of the revolution.

To this the defendants made return at *May* sessions 1811, that the relator had presented a petition to them for the same object, and that they had decided to reject it; the return setting out the cause of their decision.

*Hopkins* now moved for a peremptory *mandamus*, and upon the merits contended that the decision was wrong,

and that the Board in regard to donation lands exercised a ministerial not a judicial power.

TILGHMAN C. J. It was determined by this Court in the case of *The Commonwealth ex relat. Griffith* v. *The officers of the Land Office*, that when the board of property acted in a judicial capacity, they might be commanded to proceed to a decision, but their decision could not be controlled. In this case they have decided on the petition of Mr. *Brod-head*, so that it is only necessary to enquire whether they acted in a judicial capacity. That they did act judicially there can be no doubt. By the act of 2d *April* 1802, 3 *Sm. Laws* 506, they are invested with the same power with regard to *donation* lands, that they possessed in *other cases;* and they are expressly authorized to make the *necessary inquiry*, and *decide* on the validity and propriety of the claims of each and every applicant. In each case several facts must necessarily be enquired of. Whether the soldier was in the *Pennsylvania* line of the army? Whether he died in service, or served till the end of the war? Whether an applicant in right of a soldier has obtained a fair and legal transfer of the right? Whether such transfer was made prior to the laying out and survey of the lands, for if it was, it is void by the act of 12th *March* 1783. These and often other matters must be ascertained, before a patent can be issued. Besides, difficulties frequently arise on the construction of the several acts of assembly, which have been made on this subject. So that in no case can the board proceed without inquiry and deliberation. Having deliberated and decided in the present instance, I am of opinion that nothing more can be required of them. A *mandamus* therefore ought not to be issued.

YEATES J. Divers acts of assembly have passed at different times respecting the donation lands intended to be granted to the officers and soldiers of the line of this state. The persons so entitled are described in the fourth section of the act of 24th *March* 1785, " to be officers and soldiers " of the *Pennsylvania* regiments, or of independent corps " acknowledged by this state as of their quota in the fede-

" ral army, who have served therein until the end of the " late war with *Great Britain*, together with the widows " and children, or either thereof, of such officers and pri- " vates aforesaid, as were slain in battle, or died in the " service."

The periods wherein such lands were to be applied for, were regulated by different laws, which have been extended from time to time under certain restrictions. Under the third section of the act of 2d *April* 1802, " the board of property " were authorized to exercise the same powers relative to " donation lands, as in other cases, and in all cases of *diffi-* " *culty or dispute* between applicants under this law, and on " the *validity and propriety* of the claims of applicants, they " are authorized to make the necessary inquiries and *decide*."

*Daniel Brodhead* has applied to this Court to enforce the delivery of patents to him in consequence of certain trans- fers to him of donation lands, by persons said to be soldiers in the *Pennsylvania* line; and a return has been made to the rule served upon the board of property, that they had reject- ed his petition made to them, and that a number of the persons under whom he claims, had actually drawn their lands.

The power of this Court to issue writs of *mandamus* in proper cases cannot be questioned. The principle established by us on the *mandamus* applied for by *Robert E. Griffith* against *John Cochran* secretary of the Land Office in *May* Term 1812, must govern the decision in this instance.

It belongs to the board of property to decide, whether the persons under whose conveyances Mr. *Brodhead* claims, are within the class of soldiers entitled to the bounty of the legislature; whether the *true* men have sold their shares by contracts not interdicted by the eighth section of the law of 12th *March* 1783, and whether application has been made in due time for the lands. " They were authori- " zed to make the necessary enquiry, and to decide on the " validity and propriety of the claim" under all its circum- stances. They have proceeded in this deliberative duty, and have rejected the claim. It rests not with this Court upon the present motion to inquire into the grounds of their judi- cial act, nor to prescribe the rule which they ought to pur-

sue. Our power in such a case is confined to directing them to proceed to a decision, but not to influence them in their decision. Such was our opinion in the case of Mr. *Griffith.*

I concur in opinion that the *mandamus* prayed for be denied.

BRACKENRIDGE J. concurred.

*Mandamus* denied.